UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JEFFREY RYAN VAZQUEZ, | ) | Civil Action No.: 4:18-CV-3400-TER |
| Plaintiff, | ) | |
| -vs- | ) | **ORDER** |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues

before the Court[1] are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied.

## I. RELEVANT BACKGROUND

### A.      Procedural History

Plaintiff filed his application for DIB on February 23, 2015, alleging inability to work since

April 17, 2014 (amended onset date, tr. 41). His claims were denied initially and upon

reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on November

21, 2017, at which time Plaintiff testified. The Administrative Law Judge (ALJ) issued an

unfavorable decision on November 27, 2017, finding that Plaintiff was not disabled within the

meaning of the Act. In deciding that Plaintiff is not entitled to benefits, the ALJ made the following

findings, which have been adopted by the Commissioner:

_____

[1] This action is proceeding before the undersigned by consent pursuant to 28 U.S.C. §
636(c) and Fed. R. Civ. Proc. R. 73.

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.      The claimant has not engaged in substantial gainful activity since April 17, 2014, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: status-post motor vehicle accident with right transverse process fracture, left humerus fracture, right humerus fracture, left ankle fracture, left fibular fracture, bilateral acetabular fractures with comminution, left sacroiliac join[t] diastasis, left midfoot fracture, and right lower sacrum and coccyx fracture; and seizure disorder (20 CFR 404.1520(c).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift, carry, push, or pull up to 20 pounds occasionally and up to 10 pounds frequently, can stand and/or walk up to two hours, and can sit up to six hours throughout an eight-hour workday. He must be permitted to utilize an ambulatory assistive device such as a single-tipped cane at all times, with his contralateral upper extremity about to lift, carry, push, and pull up to the exertion limits set forth herein. He must further be allowed to alternate between a standing and seated position for two minutes each hour through out the workday while remaining at the workstation. He can occasionally balance, stoop, kneel, climb ramps and stairs, and engage in pushing and pulling or the operation of foot controls with the left lower extremity. He can frequently engage in pushing and pulling with his bilateral upper extremities, handling with his left upper extremity, and overhead reaching with his right upper extremity. Furthermore, the claimant can never engage in commercial driving and must avoid all exposure to hazards such as unprotected heights and moving machinery.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on March 11, 1982, and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CR 404.1569 and 404.1569(a)).

11. The Claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2014, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-25).

Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on November 19, 2018, making the ALJ's decision the Commissioner's final decision. Plaintiff filed an action in this court on December 12, 2018.

## ANALYSIS

In his brief, Plaintiff presents the following:

The ALJ:

(1)  Did the ALJ err in making his determination that the Plaintiff's impairments do not meet the requirements of Listing 1.03?

(2)  Did the ALJ err by failing to assess the combined effect of Plaintiff's physical and mental impairments?

(3)  Did the ALJ abuse his discretion in failing to give proper weight to Plaintiff's treating physician's opinion.

(Plaintiff's brief, ECF No. 14).

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

A.     **LEGAL FRAMEWORK**

1.     **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).  To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  See, e.g., Heckler v. Campbell, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); see generally Bowen v. Yuckert,

---

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## B.    ANALYSIS

## Listing 1.03

Plaintiff argues that the ALJ erred in making his determination that the Plaintiff's impairments did not meet the requirements of Listing 1.03.

Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.03 because the record failed to establish involvement of a major weight-bearing joint resulting in an inability to ambulate effectively.

Listing 1.03 directs a finding that an individual is disabled if he has undergone reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; is unable to ambulate effectively, as defined in Listing 1.00B2b; and a return to effective ambulation has not occurred or is not expected to occur within 12 months of the onset. 20 C.F.R., Pt. 404, Subpt. P, App'x. 1, § 1.03.

The following definition of "inability to ambulate effectively" is provided in § 1.00B2b:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.).

20 C.F.R., Pt. 404, Subpt. P, App'x. 1, § 1.00B2b(1).

The regulation further states:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine

ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Pt. 404, Subpt. P, App'x. 1, § 1.00B2b(2).

The ALJ found that the evidence did not establish that Plaintiff was unable to "ambulate effectively" as the term is defined in the Listing of Impairments. (Tr. 18).[4] He concluded that while Plaintiff ambulates with a limp and utilizes a cane, this is insufficient to satisfy the necessary standard set forth in 1.00B2b of the Listing of Impairments. Substantial evidence supports the ALJ's decision.

## Combination

Plaintiff argues that the ALJ erred in failing to properly consider the combination of effects of Plaintiff's physical and mental impairments. Plaintiff asserts that Plaintiff medically equals both Listings 1.02 and 1.03 and the ALJ erred in finding that Plaintiff did not meet Listing 102 because "no evidence indicates that the claimant is unable to 'ambulate effectively'". Further, the ALJ found that Plaintiff did not meet Listing 1.03 because the ALJ found Plaintiff's limp and cane use "remains insufficient to satisfy the necessary standard set forth in 1.00B2b." Plaintiff argues that the medical evidence along with his testimony shows that he is suffering from debilitating pain and instability in his left ankle, foot, and leg fractures and as such significantly limit his ability to ambulate effectively under SSA Listing of Impairments 1.00B2b. Plaintiff contends also that he suffers from multiple impairments pertaining to his upper extremities such as chronic pain in his right shoulder

_____

[4] As set forth above in the RFC, the ALJ found that Plaintiff must be "permitted to utilize an ambulatory assistive device such as a single-tipped cane at all times." (Tr. 19).

and left elbow, decreased grip strength in his left hand, decreased range of motion in his right shoulder, fractures in his left and right humerus, his right shoulder hurts from having to use a cane, and he cannot lift more than 15-20 pounds. Therefore, Plaintiff argues that he at least medically equals the severity of Listings 1.02 and 1.03.

The Defendant asserts this argument is without merit and the decision comprehensively discusses Plaintiff's impairments in combination. Specifically, Defendant asserts that at step three, the ALJ stated that Plaintiff did not have an impairments or combination of impairments that meets or medically equals the severity of one of the listed impairments. Further, the ALJ considered all of the evidence in formulating the RFC determining that the Plaintiff was capable of managing the demands of unskilled, sedentary work. The ALJ noted that Plaintiff revealed no evidence of having any significant discomfort while testifying and considered that Plaintiff could perform some household chores. Defendant contends that the ALJ considered the Plaintiff's apnea, neurological reports, post-accident treatment notes, pain-management records, test results, Dr. Shalkham's observations and conclusions, the report from a consultative examiner, and the other remaining medical reports, including those authored by state agency medical sources in considering the combined impairments.

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989); see also Saxon v. Astrue, 662 F.Supp.2d 471, 479 (D.S.C.2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's

impairments). The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." Walker, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id.

The law in this district is clear that when determining whether an ALJ properly considered the combined effect of impairments, the court must read the ALJ's decision as a whole. See Brown v. Astrue, C/A No. 0:10–cv–1584–RBH, 2012 WL 3716792, *6 (D.S.C. Aug.28, 2012) ("Accordingly, the adequacy requirement of Walker is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments.") (citing Green v. Chater, 64 F.3d 657 (4th Cir.1995)). In addition, "an ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, C/A No. 7:10–cv–0313, 2011 WL 1877677, * 12 (W.D.Va. May 17, 2011). Further, while the ALJ may not have expressly stated that he considered every impairment in combination, his decision makes clear that the ALJ did, in fact, consider Plaintiff's impairments in combination. See, e.g., Robinson v. Astrue, 2:10–cv–00185–DCN, 2011 WL 4368396, at *5 (D.S.C. Sept. 19, 2011) ("The structure of the ALJ's analysis of plaintiff's conditions indicates that the ALJ did, in fact, consider the conditions in combination. This analysis places the facts of this case outside of the circumstances in Walker v. Bowen."); Thornsberry v. Astrue, 4:08–cv–04075–HMH, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) ("Accordingly, the court finds that while the ALJ could have been more explicit in stating

that his discussion dealt with the combination of [claimant's] impairments, his overall findings adequately evaluate the combined effect of [claimant's] impairments. Any error on the part of the ALJ in failing to use explicit language is harmless."); Ingram v. Astrue, 3:07–cv–00823–GRA, 2008 WL 3823859, at *2 (D.S.C. Aug. 12, 2008) ("[T]he ALJ's separate discussion of each of Plaintiff's impairments indicates that he considered them 'in combination.' This Court finds that such an explanation is adequate.").

In considering Plaintiff's argument, the essential inquiry is whether Plaintiff has shown that the impairments at issue, or in combination, further restrict Plaintiff's capacity for work more than the RFC defined by the ALJ.

In the case at bar, the ALJ found Plaintiff suffered with the severe impairments of status-post motor vehicle accident with right transverse process fracture, left humerus fracture, right humerus fracture, left ankle fracture, left fibular fracture, bilateral acetabular fractures with comminution, left sacroiliac join[t] diastasis, left midfoot fracture, and right lower sacrum and coccyx fracture; and seizure disorder (20 CFR 404.1520(c)). The ALJ also noted Plaintiff's obstructive sleep apnea but found the medical evidence fails to establish that his impairment is of "the severity as to impose significant functional limitations upon the claimant. Records indicate that the condition is treated with a CPAP machine and formed the basis of little direct treatment during the period under review." ( Tr. 17). The ALJ stated that he considered Plaintiff's impairments under Listings 1.02, 1.03, 1.06, 1.07, and 11.02.[5] The ALJ concluded that after considering all the relevant Listings, the Plaintiff's

_____

[5] In the hearing, the ALJ stated that from a review of the file, "it looks like we have–we've got some evidence of seizure disorder that was kind of early on. I don't see any evidence of seizures after the period really began." (Tr. 38). Plaintiff's attorney responded "That's correct." Id. Further, Plaintiff's counsel stated "there is a past seizure disorder, and frankly, I think that Jeffrey would tell you maybe the last actual seizure he had probably was

impairments or combination of impairments did not meet or equal the criteria of the appropriate Listings. In his listing analysis, the ALJ specifically stated that he had considered the combined effects of Plaintiff's impairments. (Tr. 18).

In concluding that Plaintiff did not meet Listing 1.02 Major dysfunction of a joint, the ALJ relied on the left foot x-rays from August 20, 2014, that showed angulated fractures of the second and third metatarsal necks with a fracture through the first metatarsal base, osteoporosis with previous open reduction internal fixation of an ankle fracture, tarsometatarsal joint degenerative changes with healing fractures of the second and third metatarsal basis with slight lateral sublaxation of the second metatarsal that may indicate Lisfranc joint instability. (Tr. 18). However, the ALJ found that no medical evidence indicates that the claimant is unable to "ambulate effectively" as that term is defined in the Listing. (Id.). The ALJ considered Listing 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b and found that while Plaintiff uses a cane and ambulates with a limp, it is insufficient to satisfy the standard. (Id.). In concluding that Plaintiff did not meet Listing 1.06 Fracture of the femur, tibia, pelvis or one of more of the tarsal bones, the ALJ relied on the objective medical evidence of August 20, 2014, in which x-rays of the Plaintiff's pelvis revealed satisfactory alignment and no acute abnormalities. (Tr. 18-19). In concluding that Plaintiff did not meet Listing 1.07 Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected

---

around January of 2014" and "I guess he still has it, it's that juvenile disorder, but he hasn't had any seizure-like activity that he had document of late." (Tr. 38-39). The claimant stated "That's correct." (Tr. 39).

to be restored within twelve months, the ALJ again relied on the objective medical evidence of the x-rays taken on August 20, 2014, which revealed increasing callus and satisfactory alignment but no acute abnormality. (Tr. 19). Additionally, the ALJ concluded that there were no physical examinations or other testing establishing Plaintiff's inability to effective perform gross and fine movements effectively as specified in 1.00B2c. The ALJ discussed the following with regards to the objecting testing:

> The claimant had x-rays taken of his pelvis, left humerus, and right shoulder taken on August 20, 2014. The pelvis x-rays showed satisfactory alignment and no acute abnormalities; left humerus showed increasing callus and satisfactory alignment but no acute abnormality; and right shoulder showed no changes or acute abnormality. X-rays of the claimant['s] left elbow dated November 19, 2014, revealed continued healing of supracondlar fracture and no new fracture; pelvic x-rays showed open reduction internal fixation of a right anterior column fracture, left posterior column fracture, and left sacroiliac joint diastasis without significant interval change in alignment as compared to the August 20, 2014, x-rays; left foot x-rays showed angulated fractures in alignment as compared to the August 20, 2014, x-rays; left foot x-rays showed angulated fractures of the second and third metatarsal necks with a fracture though the first metatarsal base, osteoporosis with previous open reduction internal fixation an ankle fracture, tarsometatarsal joint degenerative changes with healing fractures of the second and third metatarsal basis with slight lateral subluxation of the second metatarsal that may indicate Lisfrance joint instability. (Exhibit 4F).

(Tr. at 21 or ECF No. 9-2 at 22 of 87).

Further, the ALJ noted that:

> The claimant was seen in the emergency department of Lexington Medical Center on February 1, 2015, with complaints of ankle pain, which he described as achy, sharp, and moderate. The review of the claimant's muscloskeletal system showed positive arthralgias, gait problems, and joint swelling; physical examination revealed edema and tenderness; and x-rays of the claimant's left foot showed fractures to the 1st, 2nd, and 3rd metatarsals with marked degenerative and post-operative changes. The claimant was diagnosed with left

foot fracture, left ankle strain, and degenerative joint disease of the left foot and ankle; prescribed medications; and discharged in stable condition. The claimant returned on March 7, 2015, for continued complaints of left foot pain that nothing relieved or exacerbated his pain. Again, review of systems showed arthralgia, joint swelling, and myalgia and the physical examination showed his left, midfoot was swollen; ankle was non-tender; neurovascular status appeared intact; and he had full range of motion. X-rays showed fractures involving the head and neck of the left 2nd and 3rd metatarsals, a healing non-displaced fracture involving the base of the left metatarsal, stable post-surgical changes involving the left ankle joint, and normal calcaneus except for a smaller plantar calcaneal heel spur. He was diagnosed wtih closed fracture of the foot.

(Tr. 22 or ECF No. 9-2 at 23 of 87).

The ALJ summarized the medical records from Dr. Shalkham from Lexington Family Practice as follows:

The claimant complained of left foot pain to Dr. Kevin Shalkham on October 7, 2014. Dr. Shalkham indicated the physical examination was normal; requested x-rays that were normal with old fractures; and diagnosed left foot toe pain. While attending physical therapy, the claimant experienced left knee pain and returned to Dr. Shalkham on October 16, 2014, and the physical examination showed positive McMurray's test and tenderness with palpation to the lateral aspect of the left knee over the joint line. Dr. Shalkham assessed the claimant with joint and knee pain, prescribed medications, gave an ACE wrap, and referred the claimant to pain management.

(Tr. 21).

The ALJ also noted:

On February 16, 2015, the claimant returned to Dr. Shalkham for new complaints of left foot pain and swelling after "rolling" his ankle. That office note indicated the claimant struggled to walk normal since his accident of April 2014, had a marked antalgic gait and station with moderate soft tissue distension of the midfoot, marked tenderness to firm palpation of Lisfranc's joint between the intermediate and medical cuneiform, and some redness across the midfoot. X-rays of the left ankle showed moderate subacute injury regarding the midfoot region of Lisfranc's joint minimal displaced fractures subtle widening between the first and second cuneiform. Dr.

Shalkham assessed left foot Lisfranc's fracture dislocation and prescribed medication and knee walker. A July 13, 2015, office note showed the claimant had complaints of right shoulder pain when he requested completion of disability paperwork. The claimant reported no significant improvement of is shoulder condition, despite multiple surgeries; and the physical examination revealed the claimant was in no acute distress, well nourished, and well developed with some decreased abduction and internal and external rotation of the right shoulder due to pain. Dr. Shalkham assessed right shoulder pain and recommended physical therapy. On April 12, 2016, the claimant again requested forms be completed. At that time, the claimant was alert, in no acute distress, well nourished, well developed, and healthy and was not seeing a specialist nor receiving physical therapy (Exhibits 5F, 7F, and 14F).

(Tr. 22).

The ALJ discussed the medical records from Dr. Damon Daniels who first saw Plaintiff on August 12, 2015, for a consultative physical examination. (Tr. 22). Dr. Daniels assessed the Plaintiff with chronic right shoulder pain, left elbow pain, left ankle pain, and bilateral hip pain, seizure disorder; chronic insomnia and indicated due to the Plaintiff's multiple orthopedic issues, his work status was compromised due to significant atrophy in his left lower extremity that would affect his ability to stand or walk for prolonged periods and opined that he doubted the Plaintiff would be able to crawl, crouch, or climb. (Id.). Plaintiff was seen on May 16, 2017, in the emergency department of Lexington Medical Center for complaints of right wrist pain with numbness after hitting his wrist on a table as well as pain in his let foot and ankle. (Tr. 23). The notes reveal that Plaintiff's musculoskeletal system was positive for arthralgias but negative for gait problem, joint swelling, or myalgias. (Id.). It was noted that Plaintiff was well developed, well nourished, and in no acute distress with normal gait, reflexes, moot affect, speech, behavior, and thought content. (Id.). He was discharged in stable condition and assessed with anxiety, hand numbness, and left foot pain. (Id.).

Additionally, the ALJ gave little weight the State agency medical consultants' conclusions

15

that Plaintiff could perform a reduced range of light work. (Id.).

The Plaintiff does not cite to any medical evidence that contradicts the substantial evidence found by the ALJ other than the Plaintiff's testimony. However, the ALJ noted the Plaintiff's testimony in his decision but found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record.

Here, the ALJ issued a thorough and comprehensive decision, in which he considered Plaintiff's alleged impairments throughout his analysis. He provided a summary of the pertinent medical evidence in which he discussed Plaintiff's alleged impairments. The ALJ considered whether Plaintiff's impairments singly and in combination met or equaled any of the listed impairments in the regulations and found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 17-24). The ALJ discussed Plaintiff's impairments in detail and addressed his reasons for affording Plaintiff certain limitations in his RFC. (Tr. at 19–24.) The ALJ considered "the entire record" when assessing Plaintiff's RFC. (Tr. at 19.). Further, it is clear from his decision that he considered all of Plaintiff's impairments when he assessed Plaintiff's RFC. The ALJ restricted Plaintiff to lift, carry, push, or pull up to 20 pounds occasionally and up to 10 pounds frequently, can stand and/or walk up to two hours, and can sit up to six hours throughout an eight-hour workday. He must be permitted to utilize an ambulatory assistive device such as a single-tipped cane at all times, with his contralateral upper extremity about to lift, carry, push, and pull up to the exertion limits set forth herein. He must further be allowed to alternate between a standing and seated position for two minutes each hour through out the workday while remaining at the workstation. He can occasionally balance, stoop, kneel, climb ramps and stairs, and engage in pushing and pulling or the operation

of foot controls with the left lower extremity. He can frequently engage in pushing and pulling with his bilateral upper extremities, handling with his left upper extremity, and overhead reaching with his right upper extremity. Furthermore, the claimant can never engage in commercial driving and must avoid all exposure to hazards such as unprotected heights and moving machinery. (Tr. 19). The ALJ discussed the medical reports and Plaintiff's testimony concluding that the objective evidence of record failed to show that Plaintiff's impairments or combination of impairments meet or equals the criteria of the appropriate Listings. (Tr. 18).

The court finds the ALJ's discussion and analysis sufficient to demonstrate that he considered Plaintiff's impairments in combination. See Thornsberry v. Astrue, C/A No. 4:08–4075–HMH–TER, 2010 WL 146483, *5 (D.S.C. Jan.12, 2010) (unpublished) ( "Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments, his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless."). The ALJ is required to "adequately explain his or her evaluation of the combined effects of the impairments." Id. This court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The ALJ's discussion and analysis, as a whole, is sufficient to demonstrate that he considered the Plaintiff's impairments in combination and is sufficient for the court to properly review the ALJ's conclusion on this issue, as well as the RFC determination. See Thornsberry v. Astrue, 2010 WL 146483, *5 (D.S.C. Jan. 12, 2010) and Brown v. Astrue, 2012 WL 3716792, *6 (D.S.C. Aug. 28, 2012). This issue is without merit. Additionally, Plaintiff fails to demonstrate any medical evidence or evidence of record other than Plaintiff's testimony that he asserts contradicts

the ALJ's findings with respect to the limitations caused by his impairments or how any additional discussion could have produced a different result. Plaintiff is essentially asking this court to reweigh the evidence with respect to these impairments, which is not within the province of this court. See Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). Substantial evidence supports the ALJ's decision. Therefore, the ALJ's decision should not be disturbed.

**Opinions**

Plaintiff argues the ALJ failed to properly weigh medical opinions of Dr. Shalkham. Specifically, Plaintiff argues that "the ALJ erred in granting the opinions of Dr. Shalkham little weight despite later coming to the same conclusion and agreeing with Dr. Shalkham." ( ECF No. 14 at 5 of 6). Plaintiff asserts that the ALJ gave little weight to Dr. Shalkham's opinion that Plaintiff is "unable to return to his past work at an Amazon distribution center. . .as he placed no function limitations upon the claimant. His opinion is also not supported by his own treatment records." Id. However, Plaintiff argues, the ALJ found "[t]he claimant is unable to perform any past relevant work." (Id.; Tr. 10). Plaintiff argues that the ALJ's "contradictory statements prejudiced [a] fair and proper review" and abused his discretion in failing to give Dr. Shalkham's opinion the proper weight. Lastly, Plaintiff argues that the ALJ erred in granting weight to his own determination that Plaintiff betrayed no evidence of any significant discomfort during the hearing and failed to recognize Plaintiff's discomfort during the hearing. (ECF 14 at 6 of 6). Defendant argues there is substantial evidence to support the ALJ's decision.

The Social Security Administration's regulations provide that "[r]egardless of its source, we

will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *Id.* The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ considers factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006).

The ALJ summarized the medical records from Dr. Shalkham from Lexington Family Practice as set forth above. The ALJ gave little weight to Dr. Shalkham's opinion that Plaintiff could

not return to his past relevant work concluding as follows:

> . . . The opinion of Dr. Shalkham [that] the claimant was unable to return to his past work at an Amazon distribution center is given little weight as he placed no functional limitations upon the claimant. His opinion is also not supported by his own treatment records in that the claimant's physical examination revealed the claimant was well developed, well nourished, in no acute distress, and by April 12, 2016, was not seeing any type of specialist or therapist for any of his alleged impairments (Exhibit 14F). Moreover, Dr. Shalkham's views regarding the claimant's inability to return to at least some work intrudes in the province of the Commissioner to determine matters of employability and veers into vocational areas outside of his medical expertise.

(Tr. 24).

It cannot be said here that the ALJ has not given good reason for the weight afforded to this particular opinions. *See* 20 CFR § 404.1527(d). The weight assigned by the ALJ to Dr. Shalkham's opinions was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The ALJ complied with SSR 96-2p (rescinded for applications after March 27, 2017)[6] in making clear to a subsequent reviewer the weight given and the reasons for that weight. The question before this court is whether substantial evidence, as a whole, supports the ALJ's findings; in this case, the ALJ's weight of a treating opinion. The ALJ properly analyzed the treating opinion of Dr. Shalkham and cited substantial evidence that supports the weight assigned to the opinion. The ALJ did not commit any legal error here where he evaluated the evidence in the record and determined Dr. Shalkham's opinions were not supported by the record and not entitled to controlling weight. The ALJ's

---

[6] The changes to the former 20 C.F.R. § 404.1527, which SSR 96-2p provided guidance on, are not effective to applications prior to March 27, 2017.

findings on this issue are supported by substantial evidence and he conducted a proper analysis in accordance with the applicable law, regulations, and policies.

## **CONCLUSION**

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. <u>Richardson</u>, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. <u>Blalock,</u> 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

<u>s/Thomas E. Rogers, III</u>
Thomas E. Rogers, III
United States Magistrate Judge

February <u>24</u>, 2020
Florence, South Carolina